## KERR v. KERR.

(Supreme Court, Appellate Division, Second Department. October 8, 1909.)

DIVORCE (§ 129*)—ADULTERY—SUFFICIENCY OF EVIDENCE.

     Evidence that defendant took a woman to a hotel in the afternoon, registered as man and wife, went with her to a bedroom, and stayed until at least after midnight, was sufficient to show adultery; seeking such privacy being evidence of inclination.

     [Ed. Note.—For other cases, see Divorce, Cent. Dig. § 434; Dec. Dig. § 129.*]

     Jenks, J., dissenting.

Appeal from Special Term, Kings County.

Action by Louise M. Kerr against George F. Kerr. From an interlocutory judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, GAYNOR, RICH, and MILLER, JJ.

Benjamin Reass, for appellant.
Henry Bonawitz, for respondent.

GAYNOR, J. The evidence is that the defendant went to the Grand Central Station with his hand-bag, met a woman not his wife as she came in on a train at about 3:30 p. m., took her with her hand-baggage to a hotel in a cab, registered her with himself as his wife by his own handwriting, under the name "George Knight and wife, New Haven," had a room assigned to them upstairs in the hotel, and immediately went with her into the lift and up as if to the room, taking their baggage with them. A witness waited in the hotel until midnight to see if he came down, but did not see him. There is no description of the woman, nor of their demeanor toward each other; the attorney for the plaintiff who tried the case seemed to have no notion of the requirements as to evidence in such cases. Though opportunity was shown, inclination, it is said, was not. But seeking such bedroom privacy was evidence of inclination, stronger than any ordinary act of affection between them at the station or in the cab. What did they register in a hotel as man and wife and retire to a bedroom for? We have it of old that "it is presumed he saith not a pater noster" there. Burton's Anat. of Mel. vol. 2, pt. 3, § 3, mem. 1, subd. 2.

The judgment should be affirmed.

Interlocutory judgment affirmed, with costs.

HIRSCHBERG, P. J., and RICH and MILLER, JJ., concur in result.

JENKS, J. (dissenting). I think that the evidence does not support the finding of defendant's adultery with an unknown woman in the Hotel York, in the borough of Manhattan, on May 15, 1907. The evidence is that an entry in the register on May 15, 1907, "George Knight and wife, New Haven, Connecticut," is in the handwriting of the defendant, and that the defendant was seen by a detective in plaintiff's

employ to come out of that hotel with a "dress suit case and a lady's hat bag," and to take his way to his office, in "the month of May," on the Wednesday or Thursday prior to the 20th—"it must have been about the 16th."

I think that the evidence does not support the finding of the defendant's adultery with an unknown woman in the Hotel Navarre, in the borough of Manhattan, on May 20, 1907. The evidence is that detectives saw the defendant meet a woman, not his wife, at the Grand Central Station in Manhattan, in the afternoon of May 20th. He and she, with this hand luggage, were driven in a cab to that hotel. One of the detectives saw the defendant and this woman enter the hotel, and while standing five feet away he saw the defendant write in the register "George Knight and wife, New Haven." The witness also saw the defendant and the woman thereupon step into the lift and be taken upstairs. The witness remained "there" until 12 o'clock midnight, and did not see the defendant "come out of the hotel." There were two entrances to the hotel. The witness also testifies, referring to the defendant, "He occupied room 440, I think; I am pretty sure"—and also that the witness attempted to go to room 440, "and such permission was not given" to him.

The witnesses produced by the plaintiff, aside from the clerks of the hotels, who respectively testify to nothing material save the mere entry in the register of the Hotel York and the loss of the register in the Hotel Navarre, were detectives hired by the wife and the brother of the plaintiff, who testified but to the handwriting of the entries in the registers of the hotels. This court has said:

"'Charges of this kind are only to be established by clear and convincing evidence. They are so serious in their character, and the results so grave, that a court should hesitate before making a finding of guilty, except when thoroughly satisfied of the truth of the charge.' Smith v. Smith, 89 Hun, 610, 35 N. Y. Supp. 556. The law and policy of this state is to preserve the stability of the marriage tie, and release from it only on safe and sound evidence." Keville v. Keville, 122 App. Div. 389, 106 N. Y. Supp. 993.

See Moller v. Moller, 115 N. Y. 466, 22 N. E. 169; Pollock v. Pollock, 71 N. Y. 137.

It is true that the defendant did not testify as to these alleged occurrences. Elliott on Evidence, § 227, says:

"The failure of the party himself to testify may also have the same effect as the failure to call other witnesses; but mere inaction, when action is not required, as, for instance, until his opponent has sustained the burden of proof, where it rests upon him, is not an admission, and will not justify an adverse inference."

In Shotwell v. Dixon, 163 N. Y. 43, 57 N. E. 178, it was said, per Martin, J.:

"Nor do we think the appellant's other contention, that because the defendants were not sworn as witnesses in the case the court may assume that a cause of action exists without the proof necessary to constitute it, can be upheld. So long as the plaintiff had not established a cause of action against them, they were neither required to make a motion for a nonsuit to protect their rights, nor were they called upon to introduce evidence to contradict or explain facts which were insufficient to establish any liability against them."