■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. PRUDENCIO PENA, by Steve Sandler, Appellant, v NEW YORK STATE DIVISION OF PAROLE et al., Respondents. — In a habeas corpus proceeding, petitioner appeals from a judgment of the Supreme Court, Westchester County (Marbach, J.), entered April 22, 1981, dismissing his petition. Judgment modified, on the law, petition granted to the extent that the alleged violation that petitioner possessed a dangerous instrument or deadly weapon as defined in the Penal Law is not sustained and the one-year period of incarceration imposed by the Board of Parole is vacated; the charge that petitioner failed to immediately notify his parole officer of a change in employment is sustained. As so modified, judgment affirmed, without costs or disbursements, and the matter is remitted to the Board of Parole for further proceedings with respect to the sustained charge. The board is directed to act with all convenient speed. Petitioner, Prudencio Pena, was arrested pursuant to a valid warrant for parole violations. Following his arrest, on November 14, 1980, a search by his

parole officer revealed a straight razor in Pena's jacket pocket. Pena did not deny ownership of the razor, but claimed that he had not used it to harm anyone. A final parole revocation hearing was held on February 23, 1981. Two of the original four charges against Pena were dismissed at the final hearing. The charge that Pena had not notified his parole officer as to his change in employment was sustained, as was the charge that he violated the following condition: that he would not "own, possess, or purchase *** any dangerous instrument or deadly weapon as defined in the Penal Law" (rule 9 of his conditions of release). Following the hearing, Pena's parole was revoked with a delinquency date of November 14, 1980. It was recommended that he be returned to prison and held for one year before a release hearing would be held. Special Term denied the petition and dismissed the writ of habeas corpus. We agree with petitioner that the Board of Parole did not establish, by the necessary preponderance of the evidence (see Executive Law, § 259-i, subd 3, par [f], cl [viii]), that he violated rule 9. A razor, straight or otherwise, is not defined as a deadly weapon in the Penal Law (§ 10.00, subd 12). It may be considered a dangerous instrument, capable of causing death or other serious injury, depending upon the circumstances in which it is used, attempted to be used or threatened to be used (Penal Law, § 10.00, subd 13). Pursuant to subdivision (2) of section 265.01 of the Penal Law, possession of a razor is illegal only if it can be proven that it was possessed "with intent to use the same unlawfully against another". Subdivision 4 of section 265.15 of the Penal Law lists those weapons from which an unlawful intent to use may be presumed by mere possession; a razor is not specifically enumerated (see *People v Adamkiewicz,* 298 NY 176, where an unlawful intent to use an ice pick was not proved so as to sustain a conviction for criminal possession of a dangerous weapon). Although a parole revocation hearing is not a criminal trial and is more in the nature of a fact-finding administrative hearing *(People ex rel. Maggio v Casscles,* 28 NY2d 415, 418), it has been held that possession of an instrument which is not per se a weapon (Penal Law, § 265.01, subd [1]), does not constitute a parole violation without a showing of the parolee's intent to illegally use such weapon *(People ex rel. Walker v Hammock,* 78 AD2d 369, 373). In *People ex rel. Wallace v State of New York* (70 AD2d 781), it was stated that the hearing officer need not follow the strict rules of evidence but that there must be a residuum of legal evidence to support the findings. The determination that the petitioner therein had violated the conditions of his parole by possessing a razor was sustained where a complaining witness testified that Wallace had cut him with a razor. There was no evidence presented at Pena's final hearing to show that he intended to use the straight razor in an unlawful manner. Gibbons, J.P., Gulotta and Bracken, JJ., concur.

Cohalan, J., dissents and votes to affirm the judgment, with the following memorandum: As noted in the majority holding, a parole revocation hearing is not a criminal trial *(People ex rel. Maggio v Casscles,* 28 NY2d 415, 418). The fair preponderance rule rather than that of guilt beyond a reasonable doubt applies. Thus, in *Maggio (supra,* p 418), the court noted that: "Perhaps more important than a statement of what a parole revocation hearing is, is a recognition of what it is not. It is not a criminal trial. A parole revocation hearing is in the nature of an administrative proceeding *** to determine whether a parolee has violated the conditions of his parole (Correction Law, § 212, subd. 7) *** The conviction of another crime or an admitted and unexplained *substantial* violation of the conditions of parole is adequate, in and of itself, to support a revocation". The majority states that: "[T]he alleged violation that petitioner possessed a dangerous instrument or deadly weapon as defined in the Penal Law is not sustained". "Deadly weapon" as so defined

includes a switchblade knife, gravity knife and dagger; and certainly the components of a straight razor are included in each or all of these items (see Penal Law, § 10.00, subd 12). "Dangerous instrument" means "any instrument * * * which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (Penal Law, § 10.00, subd 13). I seize upon the clause "or threatened to be used". Are we not hiding our heads in the sand when we refuse to presume that by the very fact of carrying such an item it constitutes a threatened use? For it seems to me that it is the height of fatuity to assume that Pena was carrying the razor on his person for any reason other than offense or defense — as one would carry a long, sharp knife. How else can his intent be proved — in the face of his "blithe" denial of intent to harm — except by exercising the presumption that he had an unlawful intent in so concealing the razor? The only logical place for a straight razor — except when in actual use for removing hair from the face or other part of the body — is a bathroom medicine cabinet or a barbershop. Bitter experience has taught us that a certain class of feloniously inclined persons carry straight razors as one would a knife — for offensive or defensive measures. As in *Kerr v Kerr* (134 App Div 141), we should indulge the obvious presumption. In *Kerr,* a divorce action for adultery, the defendant husband registered in a hotel with a woman not his wife. The couple had a room assigned to them in the hotel and immediately took the elevator upstairs, taking their baggage with them. A witness waited in the hotel until midnight to see if they came down, but did not see them. This showed opportunity and inclination and impelled the Appellate Division to affirm the granting of an interlocutory judgment of divorce. As Gaynor, J., writing for the majority, wittily observed (p 142): "What did they register in a hotel as man and wife and retire to a bedroom for? We have it of old that 'it is presumed he saith not a *pater noster'* there (Burton's Anat. of Mel. vol. 2 [1st Am. ed.], p. 446, part 3, sect. 3, mem. 1, sub. 2)." In like manner, we can indulge the presumption that unless Pena feared "five o'clock shadow" and hence was loath to be without his razor, he had no earthly reason to conceal it on his person when he ventured outdoors. I would affirm.