664 F.Supp. 162 (1987)
Ponell JOHNSON, Plaintiff,
v.
Peter KELSH, and James Martin, Fire Marshall, Defendants.
No. 86 Civ. 6473 (EW).
United States District Court, S.D. New York.
July 14, 1987.
*163 Ponell Johnson, pro se.
Robert Abrams, Atty. Gen. of State of N.Y., New York City for defendants; Gerald J. Ryan, Jay B. Damashek, Asst. Attys. Gen., of counsel.
EDWARD WEINFELD, District Judge.
Plaintiff, Ponell Johnson, has brought this pro se action for unspecified damages under 42 U.S.C. § 1983,[1] against Peter *164 Kelsh, a New York City Parole Officer, and James Martin, a New York City Fire Marshall.[2] The complaint alleges that the defendants' improper conduct during the course of parole revocation proceedings against the plaintiff unconstitutionally increased the time of plaintiff's incarceration. Specifically, the complaint alleges[3] that Kelsh improperly issued and prosecuted a warrant of violation against the plaintiff, and that Martin knowingly testified falsely at the final hearing on plaintiff's parole revocation.[4] Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. The defendants claim that they are not subject to a civil action for damages because the conduct complained of by the plaintiff is shielded by absolute immunity.

Background
Plaintiff was released to parole supervision on July 28, 1976, with a maximum expiration date of life. On April 9, 1984, he was arrested by Fire Marshall Martin of the Bronx Arson and Explosion Squad, and, later, arraigned in Bronx Criminal Court on charges of arson, reckless endangerment, and criminal mischief. A parole warrant was issued by Peter Kelsh against plaintiff on May 30, 1984, based on the indictment of plaintiff on May 7, 1984, on charges of arson, reckless endangerment, and criminal mischief. At a preliminary revocation hearing on July 13, 1984, a hearing officer found that there was probable cause that plaintiff had violated the conditions of his release. On April 30, 1985, a final hearing was held pursuant to N.Y. Executive Law § 259-i(3)(f), and plaintiff was held to have violated the conditions of his parole, despite a not guilty verdict in the underlying action in Bronx Criminal Court.[5] In response to the revocation of plaintiff's parole, this civil action was begun on August 27, 1985.

Discussion
Section 1983, under which plaintiff brings this action, does not create a damage remedy for all conduct which may result in an injury to a constitutionally protected interest.[6] Executive officials generally are entitled to qualified immunity for discretionary actions undertaken pursuant to their duty;[7] however, in some situations, absolute immunity may be essential to the effective performance by those officials of special functions.[8]
Absolute immunity is most appropriate for functions that are integrally related *165 to the judicial process.[9] It acts to protect the adjudicatory system from distorting influences. The right of judges, grand jurors, petit jurors, advocates, prosecutors, and witnesses to absolute immunity has been firmly established.[10] The need to protect the effective functioning of the justice system[11] makes absolute immunity essential, while safeguards in the judicial process reduce the need for civil damage actions to vindicate constitutional rights.[12]
Adjudications in an administrative setting also may share enough of the "characteristics of the judicial process" that those who participate in such adjudications also should be immune from suits for damages.[13] In such situations, the quasi-judicial nature of the proceedings means that the participants are functionally comparable to participants in the judicial system.[14] Parole revocation hearings are administrative in nature[15] but they have many of the indicia of judicial proceedings. Minimum due process requirements such as written notice of claimed violations; disclosure to the parolee of evidence against him; an opportunity to confront and cross examine adverse witnesses; a neutral and detached hearing officer; and a written statement by factfinders of evidence relied upon and reasons for revoking parole, serve as a buffer against constitutional infringements.[16]
Under New York State law, a hearing officer with no prior supervisory involvement over the parolee[17] holds a preliminary hearing, after written notice to the parolee, to determine if there was probable cause for the execution of the warrant. This is followed by a final hearing, which is adversarial in nature, and includes the due process safeguards required for revocation hearings.[18] Appeals may be taken from final determinations,[19] and habeas corpus relief is available. Final hearings in parole revocation cases in New York, thus, have safeguards comparable to those found in judicial trials.
These proceedings also resemble the judicial process in that the interest at stake, the freedom of the individual, is such that "the disappointment occasioned by an adverse decision often finds vent in imputations of [improper motives]."[20] The possibility of much vindictive litigation, coupled with the safeguards against constitutional infractions, counsels in favor of absolute immunity for certain participants in parole revocation hearings.[21]
The fact that parole revocation hearings are quasi-judicial in nature does not mean that all participants in the parole revocation proceedings will be accorded absolute *166 immunity from civil suit. Quasi-judicial immunity should only attach to those officials performing functions which give rise to the need for absolute protection.[22] In the present action, the function performed by defendant Kelsh was comparable to that of a prosecutor in a criminal trial. Kelsh initiated the action against the plaintiff by executing a warrant, and presented evidence to the hearing officer. There was substantially no difference between his function and the protected function of a prosecutor who initiates a suit and brings evidence before a court.[23] The interest of the public and the parolee in an impartial adjudication of the revocation application is best served by allowing the procedure to be initiated and conducted without fear of harassment or intimidation.[24]
James Martin's conduct during the final hearing is also covered by absolute immunity. Martin was a witness presented to the hearing officer to support the revocation petition. In this role, his status as a fire marshal and the arresting officer is not relevant. Witnesses are afforded absolute immunity for testimony given at trial so that they will not be reluctant to appear or be tempted to alter their testimony in fear of subsequent civil liability.[25] Arresting officers perform the same functions as other witnesses, and are subject to the same constraints.[26] In the case of a parole revocation hearing, the witness is subjected to cross examination and may be prosecuted for perjury. Subjecting an arresting officer to damages liability for his testimony in a parole revocation hearing could limit the effective performance of his public duties and limit his contribution in the revocation determination proceeding.[27]
For these reasons the complaint is dismissed for failure to state a claim upon which relief may be granted.
So ordered.
NOTES
[1] 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be a statute of the District of Columbia.
[2] The original complaint included as defendants the hearing officer at the revocation hearing, a senior parole officer, and the Chairman of the Parole Board. The complaint was dismissed as it pertained to those defendants by the order of Acting Chief Judge Brieant on August 20, 1986.
[3] In reviewing the propriety of a summary judgment motion a pro se complaint should be construed liberally. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (pro se complaint allegations are held to less stringent standards than those formal pleadings drafted by lawyers); Anderson v. Boyd, 714 F.2d 906, 908 (9th Cir. 1983).
[4] The complaint alleges that though Martin knew that plaintiff had been exonerated by a jury, "he appeared at the hearing using the same statement he [had] presented to the grand jury and the court in an obvious attempt to keep the plaintiff in prison longer."
[5] Dismissal of or acquittal on the underlying charge does not render the parole warrant invalid. See, e.g., People ex rel. Pickett v. Ruffo, 96 A.D.2d 128, 469 N.Y.S.2d 496 (1983). At a parole revocation hearing, the burden is on the State to show violation of the conditions of parole by a preponderance of the evidence, rather than the higher standard for a criminal conviction at trial. See, e.g., People ex rel. Matthews v. New York State Division of Parole, 58 N.Y.2d 196, 460 N.Y.S.2d 746, 447 N.E.2d 689 (1983); cf. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) (holding that the doctrines of double jeopardy and res judicata are inapplicable to civil trials which follow acquittals on criminal charges when the quantum of proof is different).
[6] See Briscoe v. LaHue, 460 U.S. 325, 329, 103 S.Ct. 1108, 1112, 75 L.Ed.2d 96 (1983).
[7] See Butz v. Economou, 438 U.S. 478, 507-08, 98 S.Ct. 2894, 2911-12, 57 L.Ed.2d 895 (1977).
[8] See, e.g., Id; Imbler v. Pachtman, 424 U.S. 409, 427-28, 96 S.Ct. 984, 993-94, 47 L.Ed.2d 128 (1976).
[9] See, e.g., Briscoe v. LaHue, 460 U.S. 325, 334-355, 103 S.Ct. 1108, 1115-26, 75 L.Ed.2d 96 (1983); Dorman v. Higgins, 821 F.2d 133, 136 (2d Cir.1987).
[10] See, e.g., Butz v. Economou, 438 U.S. 478, 509-10, 98 S.Ct. 2894, 2912-13, 57 L.Ed.2d 895 (1977).
[11] See Butz v. Economou, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1977) ("Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation."); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself.").
[12] See, e.g., Butz v. Economou, 438 U.S. 478, 512, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1977).
[13] Id. at 512-13, 98 S.Ct. at 2913-14.
[14] Id. at 513, 98 S.Ct. at 2914.
[15] See, e.g., People ex rel. Pena v. New York State Division of Parole, 83 A.D.2d 887, 442 N.Y.S.2d 99, 100 (2d Dept.1981).
[16] See Morrissey v. Brewster, 408 U.S. 471, 487-490, 92 S.Ct. 2593, 2603-2604, 33 L.Ed.2d 484 (1972) (setting forth the minimum due process required in parole revocation hearings).
[17] N.Y. Executive Law § 259-i(3)(c)(i).
[18] N.Y. Executive Law § 259-i(3)(f).
[19] N.Y. Executive Law § 259-i(4).
[20] Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 348, 20 L.Ed. 646 (1872).
[21] See, e.g., Anderson v. Boyd, 714 F.2d 906, 908-09 (9th Cir.1983).
[22] See id., at 909.
[23] Cf. Butz v. Economou, 438 U.S. 478, 516, 98 S.Ct. 2894, 2916, 57 L.Ed.2d 895 (1977) (the role of an administrative agency attorney in presenting evidence and conducting an administrative hearing is substantially similar to that of a prosecutor); see also Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976).
[24] See Butz v. Economou, 438 U.S. 478, 516, 98 S.Ct. 2894, 2916, 57 L.Ed.2d 895 (1977) (in the context of an administrative agency proceeding).
[25] See Briscoe v. LaHue, 460 U.S. 325, 333, 103 S.Ct. 1108, 1114, 75 L.Ed.2d 96 (1982).
[26] Id. at 342, 103 S.Ct. at 1119 (where police officers were held immune when giving testimony as witnesses before an adjudicatory body).
[27] Id. at 343, 103 S.Ct. at 1119.