**Edward Glenn MILLER, Plaintiff,**

v.

**Dolan GARRETT, David Driscoll # 15990, and David Blum, Defendants.**

**No. 84 Civ. 0666 (JES).**

United States District Court, S.D. New York.

Sept. 26, 1988.

Edward G. Miller, Otisville, N.Y., pro se.

Peter L. Zimroth, Corp. Counsel, New York City, for defendants Garrett and Driscoll; Mary Libassi, of counsel.

Robert Abrams, Atty. Gen., of the State of N.Y., New York City, for defendant Blum; Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Brenda S. Spears, Donald Sticklor, Asst. Attys. Gen., of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff *pro se* Edward Glenn Miller brings this action pursuant to 42 U.S.C. § 1983 based on numerous alleged violations of his constitutional rights arising out of his arrest on December 23, 1982. Named as defendants are Police Officer David Driscoll ("P.O. Driscoll"), Assistant District Attorney Dolan Garrett ("ADA Garrett"), and Parole Officer David Blum

("Blum"). Each of the defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56.

## FACTS

The following facts are undisputed.

On December 23, 1982, while responding to a reported burglary in progress, P.O. Driscoll and at least one other police officer encountered plaintiff, a parolee, in the lobby of 475 Linden Boulevard. *See* Final Parole Hearing Transcript ("Final Tr.") at 6, 26 (annexed as Ex. D to Affidavit of Donald Sticklor ("Sticklor Aff.")); *see also* Affidavit of Mary Libassi ("Libassi Aff."), Ex. A. Responding to the officers' inquiries, plaintiff indicated that he did not live in the building, but was there to collect some money owed him by a Mr. Mohammed who lived there. Final Tr. at 27; Complaint at ¶ IV. P.O. Driscoll searched plaintiff's jacket and allegedly seized several items from it, including a gun and a slip of paper with "Roger Mohammed, 475 Linden Blvd." written on it. Final Tr. at 8–10; Complaint at ¶ IV.[1]

P.O. Driscoll then investigated the burglary call. Based on the facts that plaintiff had a piece of paper containing the burglary complainant's address and the name of the complainant's son (Roger Mohammed), matched the description given of one of the perpetrators, and told Driscoll he had come down from the fourth floor, plaintiff was arrested and charged with the burglary as well as for possession of the gun. *See* Final Tr. at 9–10; *see also* Libassi Aff., Ex. D (accusatory instrument charging plaintiff with second degree burglary, fourth degree criminal mischief, third degree criminal possession of a weapon, and third degree attempted grand larceny). These charges were dismissed and the records sealed on January 27, 1983. *See* Plaintiff's

---

1. Although plaintiff concedes that the slip of paper was found on him, he appears to dispute P.O. Driscoll's assertion that a gun was found in his pocket. *See* Final Tr. at 28–29. *But cf.* Complaint at ¶ IV ("The police officers searched the plaintiff's jacket and found a weapon in the pocket, [and] the plaintiff told the officers on that night that he had put on his brother [sic] jacket and there was no weapon in it that he

know of [sic]."). P.O. Driscoll testified that he observed what appeared to be a gun in the right-hand pocket of plaintiff's jacket and thereafter removed it. *See* Final Tr. at 8; *see also* Sticklor Aff., Ex. B (vouchers of arrest evidence, including revolver, allegedly taken from plaintiff); Libassi Aff., Ex. D (accusatory instrument and affidavit of P.O. Driscoll).

Memorandum ("Pl.Mem.") at 2; Libassi Aff. at ¶ 8. Subsequently, on March 2, 1983, a charge of third degree criminal possession of a weapon was presented to the Grand Jury, which returned a true bill on March 25, 1983. *See* Statement of [Defendants Garrett and Driscoll] Pursuant to Local Rule 3(g) ("3(g) Stmt.") at ¶ 4; *see also* Libassi Aff., Ex. E (indictment).

Plaintiff was incarcerated in the Queensboro Correctional Facility pending a hearing on a parole violation based on the gun possession charge. *See* 3(g) Stmt. at ¶ 5. Following preliminary and final hearings, plaintiff's parole was revoked. *See id.; see also* Sticklor Aff., Ex. C–E. Thereafter, plaintiff was tried before a jury and convicted of criminal possession of a weapon on November 22, 1983. *See* 3(g) Stmt. at ¶ 8; Libassi Aff., Ex. G.

## DISCUSSION

### 1. *The Claims*

Reading plaintiff's *pro se* complaint liberally as the Court must, *see Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175–176, 66 L.Ed.2d 163 (1980) (per curiam); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (per curiam), the complaint makes a variety of allegations arising out of the aforementioned events, each of which will be discussed in turn. Plaintiff's motion papers also make several allegations which are not included in the complaint. Because plaintiff is *pro se*, the Court will consider these allegations as well so that it can determine whether plaintiff should be permitted to amend his complaint to include them.

The complaint alleges that P.O. Driscoll committed perjury on the affidavit of arrest by "stat[ing] that the plaintiff was seen by him on the 4th floor of the building." Complaint at ¶ IV. The complaint also seeks restitution of certain property allegedly seized from plaintiff and alleges that Driscoll broke two windows out of plaintiff's car and left the car to be vandalized. *See id.* at ¶¶ IV–V. In addition, plaintiff's memoranda allege that plaintiff was never given his *Miranda* warnings and that Driscoll violated his Fourth Amendment rights by searching him and seizing his property. *See* Pl.Mem. at 2; Plaintiff's Notice of Motions and Affirmation in Opposition to Defendants [sic] Motions for Summary Judgement ("Pl.Opp.") at 4–5.

Plaintiff's complaint also alleges that ADA Garrett "used underhanded tactics" in having a notice to produce plaintiff before the Grand Jury dismissed. *See* Complaint at ¶ IV. In addition, plaintiff's memorandum accompanying his complaint also alleges that "the District Attorney" presented suppressed evidence at trial, offered testimony regarding the burglary although plaintiff was not indicted for the burglary, used plaintiff's property against him at trial, and requested that the Court impose the maximum sentence on plaintiff. *See* Pl.Mem. at 3–4.

Liberally read, plaintiff's complaint alleges that Parole Officer Blum violated his right to due process by submitting a "violation of release report" against plaintiff charging possession of a weapon without any investigation. Complaint at ¶ IV. Plaintiff's memorandum also alleges that all the defendants conspired to deprive him of his constitutional rights. *See* Pl.Opp. at 3 & 8–10. In addition, the complaint alleges that the parole violation "was unconstitutional under the Miranda Act" and that he was illegally detained on the parole violation warrant. *See* Complaint at ¶ IV.

Plaintiff seeks restitution of his property and damages including lost compensation in the sum of $60,000 as well as to have the Court vacate the conviction and sentence and restore him back to parole. *See* Complaint at ¶ V.

In moving for summary judgment, defendants argue that plaintiff has brought a habeas corpus petition under the guise of a civil rights complaint without exhausting his state remedies. Defendants also argue that plaintiff is collaterally estopped from litigating certain claims because the issues underlying those claims have already been litigated in the state courts.

### 2. *Habeas Relief*

■ The law is well established that a state prisoner may not utilize a § 1983

action in federal court "to challenge either the validity of his conviction or the fact or duration of his confinement." *Mack v. Varelas*, 835 F.2d 995, 998 (2d Cir.1987). Those challenges may be made solely by a petition for habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 486, 489–90, 93 S. Ct. 1827, 1834, 1836–37, 36 L.Ed.2d 439 (1973); *Mack, supra,* 835 F.2d at 898. Because parole implicates the duration of confinement, when a prisoner is seeking reinstatement to parole, the proper remedy is habeas corpus. *See Preiser, supra,* 411 U.S. at 486, 93 S.Ct. at 1834. In contrast, when a prisoner is seeking damages, he is seeking "something other than immediate or more speedy release" and "habeas corpus is *not* an appropriate or available federal remedy." *Id.* at 494, 93 S.Ct. at 1838 (emphasis in original); *see Wolff v. McDonnell,* 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, (1974); *Mack, supra,* 835 F.2d at 998.

Thus, to the extent plaintiff is petitioning this Court to vacate his conviction and sentence and reinstate him to parole, his action must be treated as a petition for habeas corpus. *See Preiser, supra,* 411 U.S. at 486, 93 S.Ct. at 1834. As it appears from the record that plaintiff has not exhausted his state remedies, the Court may not entertain his challenges to the validity of his conviction and his parole revocation or his claims seeking release and reinstatement. 28 U.S.C. § 2254(b) (1982); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

### 3. *Civil Rights Claims*

[2] To the extent plaintiff seeks damages for alleged violations of his constitutional rights, however, his complaint is properly characterized as a civil rights complaint, and prior exhaustion of state remedies is not required. *See Preiser, supra,* 411 U.S. at 494, 93 S.Ct. at 1838; *Mack, supra,* 835 F.2d at 998–99.

In order to sustain his claims for damages pursuant to section 1983, plaintiff must allege acts done under color of state law which deprive him of federally-protected rights. *See* 42 U.S.C. § 1983. Although defendants do not dispute that the alleged acts giving rise to plaintiff's claims were done under color of state law, they contend that with respect to each such claim, there is no genuine issue as to any material fact and that they are therefore entitled to judgment as a matter of law. *See* Fed.R. Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). The claims against each defendant will be separately considered.

#### a. ADA Garrett

With respect to defendant Garrett, all of the alleged conduct giving rise to section 1983 claims "can fairly be characterized as closely associated with the conduct of litigation or potential litigation...." *Barrett v. United States,* 798 F.2d 565, 571–72 (2d Cir.1986). Since the prosecutor is absolutely immune from suits arising out of such conduct; defendant Garrett is entitled to summary judgment on all of these claims.[2] *See Imbler v. Pachtman,* 424 U.S. 409, 424, 427, 96 S.Ct. 984, 992, 993, 47 L.Ed.2d 128 (1976); *Barrett, supra,* 798 F.2d at 571–72.

**2.** Defendants argue that ADA Garrett did not represent the people of New York during the suppression hearing, at trial, or at sentencing. *See* Libassi Aff. at 6 n. 3. The excerpts of the trial record lend at least partial support to this contention. *See, e.g.,* Libassi Aff., Ex. E at 1 (listing appearance of ADA Luise Barrack for the People). However, in light of the Court's conclusion that all the challenged acts of the ADA are covered by absolute immunity, the actual extent of ADA Garrett's involvement with the case is immaterial.

Similarly, the Court need not dwell on plaintiff's apparent attempt to name District Attorney Elizabeth Holtzman as a defendant. Although plaintiff named the District Attorney as an additional defendant, *see* Complaint at ¶ III(C), she is not listed in the caption and was never served with a summons or complaint. In any event, the acts of the District Attorney challenged in plaintiff's memorandum are also "closely associated with the conduct of litigation or potential litigation," *Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986), and therefore the District Attorney would be entitled to absolute immunity, assuming arguendo that the claims against her would not be barred by *Monell v. Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978).

### b. Parole Officer Blum

■ Parole Officer Blum is also protected by official immunity. Although both the Supreme Court and the Second Circuit have left open the question of whether a state parole officer enjoys absolute immunity, *see Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980); *Stewart v. Lattanzi,* 832 F.2d 12, 13 (2d Cir.1987) (per curiam), it is clear that the degree of immunity afforded to a state official depends on the function he serves, *Briscoe v. LaHue,* 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983); *Dorman v. Higgins,* 821 F.2d 133, 136 (2d Cir.1987).

The undisputed facts indicate that Parole Officer Blum not only filed the notice of violation and violation of release report that gave rise to plaintiff's parole revocation proceedings, but also presented the case for revocation at both the preliminary and final hearings, testified at the preliminary hearing, and produced evidence and a witness at the final hearing. *See* Sticklor Aff., Ex. A–D. Thus, Blum performed a role comparable to a prosecutor in a criminal case, and therefore also is entitled to absolute immunity. *See Farrish v. Mississippi State Parole Board,* 836 F.2d 969, 975–76 & 976 n. 13 (5th Cir.1988); *Johnson v. Kelsh,* 664 F.Supp. 162, 165–66 (S.D.N.Y. 1987) (Weinfeld, J.); *cf. Butz v. Economou,* 438 U.S. 478, 516–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978) (administrative agency attorney who served role similar to prosecutor entitled to absolute immunity).

Moreover, even if Parole Officer Blum is entitled to only qualified immunity, *cf. Ray v. Pickett,* 734 F.2d 370, 372 (8th Cir.1984), plaintiff's claims against Blum must still be dismissed. A state official is entitled to qualified immunity for conduct which did not violate clearly established statutory or constitutional rights of which an official could reasonably be expected to know. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Stewart, supra,* 832 F.2d at 13. The undisputed facts indicate not only that Blum could not have reasonably known that he violated clearly established statutory or constitutional rights, but indeed, that no such rights were violated.

Although plaintiff's complaint alleges that Blum failed to investigate the weapons charge before submitting a violation of release report, the uncontroverted facts demonstrate that Blum *did* investigate the charge. Indeed, Blum filed his report only after questioning plaintiff about the charge. *Compare* Final Tr. at 37 (Blum questioned plaintiff on December 28, 1982) *with* Sticklor Aff., Ex. B (violation of release report dated December 29, 1982). Plaintiff then received a preliminary hearing on the charge, at which time probable cause was found, *see* Sticklor Aff., Ex. C at 15, and his parole was revoked only after a final hearing at which the arresting officer, Driscoll, was produced, *see id.,* Ex. E; Final Tr. at 59.

Plaintiff's claim that he was illegally detained pending revocation of his parole must also be dismissed. The undisputed facts establish that plaintiff was reincarcerated on a warrant for violating the terms of his parole, and that this detention was neither unlawful pursuant to New York law, *see* N.Y.Correct.Law § 218 (McKinney's 1987); N.Y.Exec.Law § 259–i(3) (a)(i) (McKinney's 1982), nor unconstitutional, *cf. United States ex rel. Taylor v. Brierton,* 458 F.Supp. 1171, 1173–74 (N.D.Ill. 1978) (parolee in custody under parole violation warrant has no constitutional right to bail pending revocation hearing); *see also Galante v. Warden,* 573 F.2d 707, 708 (2d Cir.1977).

### c. Police Officer Driscoll

■ Plaintiff's claim that P.O. Driscoll did not read him his *Miranda* rights must also be rejected. The Supreme Court has repeatedly held that *Miranda* warnings are not themselves required by the Constitution; rather, the warnings are prophylactic measures to insure that the Fifth Amendment is not violated. *See, e.g., Oregon v. Elstad,* 470 U.S. 298, 306 & n. 1, 105 S.Ct. 1285, 1291–92 & n. 1, 84 L.Ed.2d 222 (1985); *New York v. Quarles,* 467 U.S. 649, 654, 104 S.Ct. 2626, 2630, 81 L.Ed.2d 550 (1984); *Michigan v. Tucker,* 417 U.S. 433, 444, 94

S.Ct. 2357, 2363–64, 41 L.Ed.2d 182 (1974). Thus, unless statements taken in the absence of *Miranda* warnings are used in some way to incriminate the speaker, his constitutional rights have not been violated. *See Triplett v. Azordegan,* 570 F.2d 819, 822 (8th Cir.1978). As plaintiff has failed to identify any statement taken in violation of *Miranda* that was used to incriminate him, these claims are insufficient as a matter of law.[3]

Plaintiff alleges a number of other claims against P.O. Driscoll which likewise cannot withstand a motion for summary judgment. Although plaintiff's complaint alleges that Driscoll damaged plaintiff's car, plaintiff's affirmation filed in response to defendants' motion fails to even allude to this allegation. As the allegation is thus completely unsupported by any facts whatsoever, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Similarly, there is no evidence that plaintiff has demanded and been denied return of his property. Indeed, counsel for P.O. Driscoll has represented that at least some of the items seized from plaintiff can be recovered from the Property Clerk's Office. *See* Libassi Aff. at 6 n. 2.

█ Plaintiff's claim of perjury, however, may be sufficient to establish a section 1983 claim on a theory of malicious prosecution. While it is true that Officer Driscoll stated on the affidavit of arrest that he found plaintiff "in the proximity of" the burglarized apartment, which was apparently on the fourth floor of the building, *see* Libassi Aff., Ex. D (affidavit of arrest), and plaintiff admits that he was found in the lobby of the building, summary judgment on these facts would nevertheless be inappropriate. The evidence, although undisputed, is susceptible to differing inferences as to the meaning of the word "proximity" and Officer Driscoll's in-

tent in using that word in the affidavit. Therefore, the questions of whether the affidavit was false and Driscoll intended it to be false must await trial by the fact finder. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987); *Wakefield v. Northern Telecom, Inc.,* 813 F.2d 535, 540 (2d Cir. 1987).

█ As noted *supra,* plaintiff's claim that his Fourth Amendment rights were violated by Driscoll's unlawful search and seizure was raised in one of plaintiff's memoranda rather than in his complaint. Nevertheless, Driscoll has treated that claim as if it were raised in the complaint, contending that summary judgment as to that claim is appropriate because plaintiff is collaterally estopped from litigating that issue. *See* Libassi Aff. at ¶¶ 38–39. Thus, the Court will consider both plaintiff's allegations and Driscoll's opposition in determining whether plaintiff should be permitted to amend his complaint to add these allegations.

As Driscoll notes, plaintiff was afforded a suppression hearing in state court and the state court determined that the gun seized from plaintiff need not be suppressed. *See* Def. 3(g) Stmt. at ¶¶ 6–7. However, in the absence of an opportunity to review the transcript of the state court proceedings with respect to this issue, the Court cannot definitively determine whether defendant has carried his burden on this summary judgment motion of establishing that plaintiff had a full and fair opportunity to litigate the issue of the lawfulness of the search and seizure. *See Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Thus, the Court will permit plaintiff to amend his complaint to plead this allegation, at which time defendant Driscoll may wish to renew his motion for summary judgment as to

---

**3.** Plaintiff does challenge the introduction at trial of certain statements he made to Parole Officer Blum. *See* Pl.Mem. at 3. The record clearly indicates, however, that these statements were suppressed, *see* Libassi Aff., Ex. F at 4; Reply Affidavit of Mary Libassi ("Libassi Reply Aff."), Ex. N at 42, and were used only to im-

peach plaintiff's inconsistent direct testimony at trial, *see* Libassi Reply Aff., Ex. N at 45–46; *see also id.,* Ex. M (transcript of plaintiff's direct testimony). This limited use of plaintiff's statements did not violate the Fifth Amendment. *See Harris v. New York,* 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971).

this claim and include the transcript of the supression hearing.[4]

### d. The Conspiracy Claim

█ Summary judgment must be granted with respect to plaintiff's claim that defendants conspired to maliciously prosecute him. Plaintiff's conclusory allegations of conspiracy are based essentially on conversations between the defendants and plaintiff's allegedly illegal detention on the parole violation until ADA Garrett could secure an indictment. *See* Pl.Opp. at 8. However, as noted *supra*, plaintiff was not illegally detained, and the Second Circuit has held that routine conversations and meetings such as those alleged are insufficient to permit an inference of conspiracy, *see San Filippo v. U.S. Trust Company of New York, Inc.*, 737 F.2d 246, 256 (2d Cir. 1984).

### CONCLUSION

The Court having determined that there are no disputes with respect to any material facts regarding plaintiff's claims against defendants Garrett and Blum, those defendants' motions for summary judgment are granted and plaintiff's complaint is dismissed as to them. Summary judgment is also granted as to the claims against P.O. Driscoll, except for the claim of perjury. Plaintiff may file an amended complaint against P.O. Driscoll restating this allegation and adding his allegations of Fourth Amendment violations within sixty days of the filing of this Opinion and Order. A Pre–Trial Conference shall be held on December 23, 1988 at 10:30 A.M.

It is SO ORDERED.

---

**4.** Plaintiff argues that regardless of what the state court determined at his suppression hearing, collateral estoppel is inapplicable since that determination is subject to appellate review. The pendency of an appeal, however, is irrelevant to a determination of whether a judgment is final for collateral estoppel purposes. *See Cerbone v. County of Westchester*, 508 F.Supp. 780, 785 (S.D.N.Y.1981) (Weinfeld, J.); *Rodriguez v. Beame*, 423 F.Supp. 906, 908 (S.D.N.Y. 1976) (Pollack, J.).