**Herbert W. ROUNSEVILLE and Robert Rounseville, Plaintiffs,**

v.

**Samuel ZAHL, Treva M. Way, Geoffrey P. Serata, and Hon. James W. Barrett, Richford Town Justice, Defendants.**

No. 89–CV–1020.

United States District Court, N.D. New York.

April 15, 1993.

---

Ronald R. Benjamin, Binghamton, NY, for plaintiffs.

William S. Friedlander, Friedlander, Friedlander, Reizes, Joch & Littman, P.C., Waverly, NY, for defendants Zahl, Way, and Serata.

Lawrence Knickerbocker, Cortland, NY, for defendant Barrett.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Presently before the court is a motion by defendants Zahl, Way, and Serata for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, including a request pursuant to 42 U.S.C. § 1988 for costs and attorney's fees as the "prevailing party" in a 42 U.S.C. § 1983 action. Oral argument was heard on November 11, 1991 in Syracuse, New York. For the reasons stated below, the motion is granted in its entirety. Further, the court *sua sponte* dismisses plaintiff's complaint against defendant Barrett and sanctions plaintiffs' counsel pursuant to Fed.R.Civ.P. 11 for abuse of the judicial processes of this court.

## I. BACKGROUND

Plaintiffs' complaint consists of a § 1983 claim against defendants for allegedly conspiring to deprive plaintiffs of "rights guaranteed by the Constitution of the United States including but not limited to the due process clause thereof," Complaint, Document ("Doc.") 1, ¶ 31, and a pendant state law claim for malicious prosecution. The plaintiffs, father and son, were serving as Town Assessors for the Town of Richford when, on March 25, 1989, a criminal complaint alleging official misconduct in violation of New York Penal Law § 195.00 was filed against plaintiffs by defendants Zahl, Way, and Serata, all Richford residents. The criminal complaint was filed with defendant Barrett, the Richford Town Justice. Plaintiffs contend that Zahl, Way, and Serata conspired with Judge Barrett to file the criminal complaint which was false and without cause, and brought solely for the purpose of injuring, humiliating, and embarrassing plaintiffs. Complaint, Doc. 1, ¶ 33. The totality of this alleged conduct by defendants constitutes the basis of plaintiffs' malicious prosecution claim. The participation of Judge Barrett in the alleged conspiracy purportedly provides the requisite conduct under color of state law to support plaintiffs' § 1983 claim. Although the District Attorney did refuse to prosecute the criminal complaint, and Judge Barrett did dismiss the charges on May 13, 1989, Complaint, Doc. 1, ¶¶ 24, 25, plaintiffs assert that they suffered serious emotional and economic harm as a result of the charges filed against them. The various components of the instant lawsuit are set forth below.

### A. The Conspiracy Theory

The alleged conspiracy stems from the efforts of the named defendants and others to oppose certain tax assessment practices in the Town of Richford.[1] Defendants

---

1. The facts set forth herein are gleaned from defendants' motion papers in support of summary judgment, as well as from plaintiff's complaint, defendants' answers, and the arguments made orally by each side on November 8, 1991. Plaintiffs failed to timely file a memorandum of law and an affidavit in opposition to the summary judgment motion as required by Local Rule 10(c), and also failed to timely file a statement of material facts as to which there exists a genuine issue as required by Local Rule 10(j). Although there is correspondence from plaintiffs' counsel in the file indicating his opinion that defendants' Local Rule 10(j) statement is deficient, any such deficiency is a matter for the court to address and does not excuse plaintiffs from filing the documents required by Local Rule 10 and Fed. R.Civ.P. 56 to oppose the instant motion. After the Local Rule 10(e) deadline for filing papers expired, and in response to a telephone inquiry

Zahl, Way, and Serata were active members of a citizens group that was organized to address perceived inequities in property assessments in the town. Defendants were motivated by what they perceived as unfair assessments of their own properties. The impetus for and nature of the involvement of each defendant in the alleged conspiracy is summarized from that individual defendant's submissions to the court.

### 1. Defendant Zahl

Defendant Zahl objected to a plan to raise assessments in the entire town over a three-year period, one-third of the town at a time, meaning that the people whose assessments were increased the first year would be paying higher taxes longer than those property owners whose assessments were raised in the second and third years of the program. Zahl attended town meetings and voiced his objections to the plan, studied the town's tax records and, along with "about 75" other citizens, consulted with an attorney for advice on the matter. Zahl Affidavit, attached to Doc. 11, ¶ 2. In his review of the Town of Richford tax rolls, Zahl "discovered that the properties of Herbert and Roberta Rounseville had a very low assessed value considering the size of their property and the assessed values of similar property." *Id.* ¶ 3. In addition, Zahl found that property of Herbert Rounseville's son and daughter-in-law, and the property of Herbert Rounseville's friend, the Richford Town Supervisor, all had lower assessments than other property "objectively less valuable." *Id.* Indeed, Zahl alleges that the Town Supervisor publicly "admitted to having a very low assessment." *Id.*

Zahl and approximately ten other citizens, including Serata, then contacted their state assemblyman and the New York State Department of Equalization and Assessment to relate their findings. *Id.* ¶ 4. In response, Zahl states that he "received letters explaining that the assessment practices were illegal and highly inequitable." *Id.* The group again consulted with its attorney, who ad-

vised Zahl and Serata to "present [their] findings to the District Attorney." *Id.*

Zahl states that in February of 1989, he, Serata, and Way approached the District Attorney's office and "presented Robert Simpson with copies of the tax roll and photographs of similar properties with widely varied assessments." *Id.* ¶ 5. Zahl adds, on information and belief, that "Mr. Simpson's assistant, George Mundt, was Herbert Rounseville's personal attorney at the time." *Id.* While Simpson told the trio that he would "get back" to them in "about a week," Zahl states that they "never received a reply." *Id.*

"Frustrated by the unresponsiveness of Mr. Simpson," Zahl telephoned the Department of Assessment to ask them to "investigate the Rounsevilles for their assessment practices." *Id.* ¶ 6. Zahl claims that the Department told him he could handle the matter himself. The Department sent Zahl information, including New York Penal Law § 195.00. According to Zahl, "after reading that statute, I believed that from the facts my fellow citizens and I had gathered, the Rounsevilles had clearly violated it." *Id.* In the company of defendants Way and Serata, Zahl "went to the home and court of Judge Barrett ... for the purpose of filing and swearing to an accusatory instrument" on March 25, 1989. *Id.* ¶ 7. Zahl signed the instrument, attached to which were the tax rolls and some photographs of various properties. *Id.*

### 2. Defendant Way

Defendant Way's discontent with the assessment practices in the Town of Richford date back to the construction of her log home in 1981–82. Her home is the same dimension and type as Herbert Rounseville's, as both homes were constructed by the same builder around the same time. Way Affidavit, attached to Doc. 11, ¶ 3. Her log home, a single structure located on one acre, was assessed at $9,000 while Rounseville's prop-

---

from the court regarding plaintiffs' position on the motion, plaintiffs' counsel posed alternative requests for adjournment or leave to file late papers. Both requests were denied by letter

dated October 31, 1991. Hence the record consists only of those documents specified above, and the arguments presented orally on the November 8, 1991 return date of the motion.

erty, "the same cabin with a three car garage, nine trailers, another two car garage, a small cottage and two other buildings and forty five more acres of land," was assessed at only $16,800. *Id.* ¶ 11. Way filed administrative grievances about the disparity, but they allegedly were ignored. *Id.* ¶¶ 5, 6. Her assessment was also among the first wave of increased assessments under the three-year plan to reassess the town. *Id.* ¶ 7. She thought this was unfair and told Herbert Rounseville as much. *Id.* He allegedly responded that "he was the assessor and that he could and would do as he wanted." *Id.*

Way then wrote to the Department of Equalization and Assessment describing the three-year, three-phase reassessment plan. *Id.* ¶ 8. David Gaskell of the Department purportedly responded by letter dated November 30, 1989 that the plan "was an illegal practice and was considered piecemeal reevaluation." *Id.* At defendant Zahl's invitation, Way and her husband joined the "large group of Richford citizens who were unhappy with the piecemeal reevaluation," and contributed to the group's fund to obtain legal representation. *Id.* ¶ 9.

In February of 1989, Zahl reported back to Way and her husband the advice of the group's lawyer, and she volunteered to accompany Zahl to "explain to the District Attorney that Mr. Rounseville and I had the same size cabin but that his was assessed much lower." *Id.* ¶ 10. Way asserts that after informing the District Attorney of these facts, "Mr. Simpson said he would look into the matter and get back to us in a week or so. He never called us. I called his office every day for one week but he was not available and never returned my calls." *Id.* ¶ 11. Way further states:

> Because of my experience with Mr. Rounseville, my unsuccessful efforts to have my property assessed equitably, and the refusal of the District Attorney to address my complaints, I signed, on March 25, 1989, in the presence of Judge Barrett, a complaint accusing the Rounsevilles of

violating New York Penal Law by abusing their public office for private gain. *Id.* ¶ 12.

### 3.. Defendant Serata

Defendant Serata was disgruntled because his property assessment was raised from $16,900 to $19,900 in 1987 and to $22,900 in 1988, and his inquiries to Herbert Rounseville regarding the increases apparently were ignored. Serata Affidavit, attached to Doc. 11, ¶ 2. He studied the tax rolls, which led him to suspect that the Rounsevilles were under-assessing properties owned by themselves, their relatives, and their friends. *Id.* ¶ 3. Serata joined the group of citizens concerned about the piecemeal reevaluation of property in Richford, consulted an attorney with other members of the group seeking advice on "how to deal with our assessment problems," wrote to his state assemblyman who in turn referred his complaint to Mr. Gaskill of the New York State Department Equalization and Assessment. *Id.* ¶ 4. Serata states that he, along with defendants Zahl and Way, presented information about Herbert Rounseville's alleged inequitable assessments to the District Attorney, but never received a reply. *Id.* ¶ 5. On March 25, 1989, Serata went to Judge Barrett's court with defendants Zahl and Way and signed an accusatory instrument based on his belief that the Rounsevilles had violated N.Y. Penal Law § 195.00. *Id.* ¶¶ 6–7.

### 4. Defendant Barrett

Plaintiffs allege that Judge Barrett met with the other defendants prior to the filing of the accusatory instrument and assisted in the preparation of that instrument. Answers to Interrogatories, dated May 11, 1990, Exhibit ("Exh.") B attached to Doc. 11, ¶¶ 11, 15, 22. Specifically, plaintiffs state:

> Upon information and belief, Defendant Barrett advised and assisted the other Defendants in preparing and processing this accusatory instrument and may well have suggested the same. Defendant Barrett discussed this matter with the other Defendants and possible other individuals and notarized the Complaint on or about March 25, 1989. He thereupon arraigned

# 1154

the Defendants and would have continued the criminal prosecution but for the District Attorneys [sic] refusal to go along with the same.

*Id.* ¶ 15. Plaintiffs claim that defendant Barrett used his official position as Town Justice to violate plaintiffs' constitutional rights by conspiring with the other defendants to remove plaintiffs from their respective assessor positions. *Id.* ¶¶ 18, 22, 23.

Zahl, Way, and Serata all deny discussing the matter with Judge Barrett prior to the filing of the accusatory instrument, and contend that the Judge's only dealings with them were in his capacity as judge, the person with whom misdemeanor complaints are filed as a matter of standard practice in the Town of Richford. Zahl Affidavit, attached to Doc. 11, ¶ 8; Way Affidavit, attached to Doc. 11, ¶ 13; Serata Affidavit, attached to Doc. 11, ¶ 8.

Defendant Barrett, through his answer to plaintiffs' complaint, generally denies the existence of a conspiracy and asserts that his position as Town Justice vests him with absolute immunity from civil liability for his actions in connection with the initiation of the criminal prosecution of the Rounsevilles. Barrett's Answer to Complaint, Doc. 4, ¶¶ 3, 5.[2]

### 5. The Criminal Complaint

Based on their interpretation of New York Penal Law § 195.00 and the information they had concerning the Rounseville's assessment practices and tax rolls, Zahl, Way, and Serata met with Judge Barrett in court on March 25, 1989, and later went to his house where the Judge's wife typed the criminal complaint and the three accusers signed it. Defendant's Memorandum of Law, Doc. 12, at 5. The District Attorney subsequently refused to prosecute the claim, allegedly "because the taxpayers of Tioga County would not be willing to hire an independent assessor to prove the allegations in the complaint," *id.,* and Judge Barrett dismissed the charges on May 13, 1989. Complaint, Doc. 1, ¶¶ 24, 25.

The crux of plaintiffs' conspiracy theory appears to be Judge Barrett's purported role. Specifically, in their Answers to Interrogatories, dated December 27, 1989, attached to Doc. 11 as Exh. B, ¶ 17 plaintiffs contend:

> The facts to support a conspiracy are that the Defendants brought the criminal proceedings in the first instance and that the Defendant Barrett arraigned Plaintiffs on these charges even though, upon information and belief, he was a participant in drafting the same, recommending the same or otherwise participating in the bringing about of these charges.

Plaintiffs elaborated on this contention in their Answers to Interrogatories, dated May 11, 1990, attached to Doc. 11 as Exh. B, ¶ 11, with the following:

> The Defendant Barrett arraigned the Plaintiff [sic] on the criminal prosecution alleging a violation of Sec. 1950 [sic], Subdivision 1 & 2 of the Penal Law of this State. This conduct was carried out together with the other Defendants as part of a conspiracy to deny Plaintiff [sic] of the rights set forth in the Complaint. By acting in his official capacity, Defendant, Barrett, was acting under Color of Law and thereby brings Plaintiff [sic] within the group protected under 42 USC 1983.

Plaintiffs introduce no concrete factual evidence in the form of documents or affidavits to support the assertions in their answers to interrogatories.

### B. *The Malicious Prosecution Theory*

Plaintiffs maintain that the accusatory instrument was filed by Zahl, Way, and Serata with Judge Barrett in an attempt to "forc[e] the plaintiffs to resign from their positions as Assessor [sic], embarrassing and humiliating [plaintiffs] and otherwise attempting to carry out unlawful objectives by use of the criminal process." Complaint, Doc. 1, ¶ 18. Plaintiffs allege that defendants "knew or should have known that there was no cause probable or otherwise" for the claim that plaintiffs were violating § 195.00. *Id.* ¶ 20. Indeed, plain-

---

**2.** The only indication this court has before it of Judge Barrett's position regarding plaintiffs' claims is his answer to the complaint. He did not file papers in connection with the summary judgment motion nor did he file a separate motion of any kind.

tiffs assert that they "were lawfully carrying out their public office and engaging in no criminal conduct of any type and that each of the individual defendants knew or should have known the same and that there was no basis whatsoever for bringing any criminal proceedings against [plaintiffs]." Answers to Interrogatories, dated December 27, 1989, Exh. B attached to Doc. 11, ¶ 13. According to plaintiffs, defendants "had no factual information to assume or hold a good faith belief that Plaintiffs were engaging gin [sic] criminal activity but disagreed with assignments [sic] they made on various properties." Answers to Interrogatories, dated May 11, 1990, Exh. B attached to Doc. 11, ¶ 50. Plaintiffs contend that "[the criminal charge] is malicious because it was brought without regard to the consequences to the Rounsevilles," *id.* ¶ 51, and that one brings false criminal charges "with the intent to injure[,] humiliate and embarrass the subject of the criminal prosecution as a matter of common sense." *Id.* ¶ 52.

On the contrary, Zahl, Way, and Serata each maintain:

I believed ... at the time I signed the complaint, that the Rounsevilles had violated and were continuing to violate New York law. I still believe that the Rounsevilles abused their offices in violation of New York Penal Law § 195 [195.00] (1) and (2).

None of my actions were done with malice; I simply wanted my property assessed equitably and I reasonably believed that the Rounsevilles were responsible for the illegal assessment practices of which my fellow citizens and I accused them.

Zahl Affidavit, attached to Doc. 11, ¶¶ 14, 15; Way Affidavit, attached to Doc. 11, ¶¶ 14, 15; Serata Affidavit, attached to Doc. 11, ¶¶ 9, 15. Zahl adds:

The Rounsevilles and their relatives and friends, according to the tax rolls, were paying less than their fair share of taxes by virtue of the Rounsevilles' positions as assessors. My actions were solely to assure that I paid only my fair share of taxes and to seek justice.

Zahl Affidavit, attached to Doc. 11, ¶ 15. Serata adds: "I simply wanted to pay my

fair share of taxes and see that others who were locally involved paid theirs as well." Serata Affidavit, attached to Doc. 11, ¶ 15.

### C. *Damages Asserted*

Plaintiffs claim that they resigned from their positions as Town Assessors because of the public humiliation resulting from the criminal charges, that their reputations were damaged, and that they suffered economic losses and emotional distress. Herbert Rounseville contends that he discontinued his other civic activities in Richford, and even relocated to South Carolina as a result of his notoriety stemming from these charges. Plaintiffs request compensatory damages of $500,000 for each claim, exemplary damages of $250,000 for each claim, and the costs of bringing the lawsuit.

### D. *Defendants' Summary Judgment Motion*

Defendants Zahl, Way, and Serata move for summary judgment pursuant to Fed. R.Civ.P. 56, contending that there is no reasonable basis upon which to assert that their actions were performed under color of state law, Defendants' Memorandum of Law, Doc. 12, at 4–7, and in any event, plaintiffs have failed to allege facts substantiating their assertion that their constitutional rights were violated. *Id.* at 7–10. Defendants assert that plaintiffs therefore have failed to establish a viable claim under 42 U.S.C. § 1983, and defendants are entitled to judgment as a matter of law with respect to the federal claim.

As for the state malicious prosecution claim, defendants contend that plaintiffs have failed to allege facts sufficient to support the elements of the claim deemed necessary under New York common law. *Id.* at 11. It is necessary for plaintiffs to prove four elements in order to recover for malicious prosecution: defendants must have commenced a criminal proceeding against plaintiffs; the proceeding must have been terminated in plaintiffs' favor; there must have been no probable cause to institute the criminal proceeding; and the criminal proceeding must have been instituted in actual malice. *Id.* at 10–11. Defendants argue that merely filing

an accusatory instrument does not constitute commencing a criminal proceeding for the purposes of malicious prosecution. Moreover, defendants assert that they acted with probable cause, as they had reason under the circumstances to believe the Rounsevilles were guilty of violating Penal Law § 195.00, and thus defendants argue that they were not motivated by malice in filing charges against plaintiffs. *Id.* at 11–16. Because plaintiffs fail to allege facts sufficient to substantiate necessary elements of a malicious prosecution claim, particularly the lack of probable cause element and the presence of malice element, defendants argue that they are entitled to summary judgment on that claim as a matter of law.

Defendants also urge the court to exercise its discretion under § 1988 to award them attorney's fees and costs as the prevailing party in a § 1983 action. Defendants contend that such an award is justified in this case because of plaintiffs' use as a pretext to get into federal court the legitimate acts of Judge Barrett to constitute the requisite action under color of state law to support a § 1983 claim, the inclusion of which allowed plaintiffs to bring their baseless malicious prosecution claim to federal court as well. *Id.* at 3, 16–17. Further, defendants assert that they are entitled to a § 1988 award of attorney's fees and costs because plaintiffs failed to establish an objective and sound legal basis to bring the present action; indeed, defendants believe the suit was filed in retaliation for defendants' legitimate exercise of their right to seek legal redress of the wrong they perceived in plaintiffs' assessment practices. *Id.* at 17–18.

## II. DISCUSSION

### A. *Summary Judgment Standard*

■ The principles guiding this court's consideration of a motion for summary judgment are well established. On a summary judgment motion, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Where, as in the instant case, the moving party does not bear the ultimate burden of

proof on an issue, that party satisfies its summary judgment burden by "point[ing] to the absence of evidence to support an essential element of the non-moving party's claim." *Bay v. Time Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2nd Cir.1991).

■ When the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The opposing party cannot rely on "mere speculation or conjecture as to the true nature of the facts," *Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990) (internal quotation omitted), nor will conclusory allegations suffice to overcome a summary judgment motion. *Twin Laboratories v. Weider Health Fitness,* 900 F.2d 566, 568 (2d Cir.1990). Rule 56(e) requires the opposing party to come forward with *"specific facts* showing that there is a genuine issue for trial" (emphasis added). In other words, to avoid the entry of summary judgment the opposing party must prove that there is a genuine factual dispute in that a reasonable jury could return a verdict for either party on the evidence presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991). When reviewing the record the district court "must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Lendino v. Trans Union Credit Information Co.,* 970 F.2d 1110, 1112 (2nd Cir.1992). This does not mean that the court will make assumptions to benefit the nonmoving party. Rather, only where the facts specifically set forth by the nonmoving party in accordance with Rule 56(e) contradict facts specifically averred by the moving party will the court determine that a genuine issue exists to preclude the entry of summary judgment. *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

### B. *Defendants' Motion*

#### 1. Section 1983 Claim

■ It is axiomatic that to be entitled to

relief pursuant to 42 U.S.C. § 1983,[3] plaintiffs must establish (1) that they were deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) that the conduct causing the deprivation was attributable at least in part to a person acting under color of state law. *E.g., Gomez v. Toledo,* 446 U.S. 635, 638, 640, 100 S.Ct. 1920, 1922, 1923, 64 L.Ed.2d 572 (1980); *Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, (1970); *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993). When a § 1983 claim is premised on an underlying state law claim for malicious prosecution, as in this case, state principles govern in the absence of federal common law. *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989). In other words, when considering a § 1983 claim "essentially for deprivation of civil rights through malicious prosecution, we look to common law elements of a malicious prosecution claim in judging the merits of the § 1983 action." *McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 520 (6th Cir.1987); *see also Hygh v. Jacobs,* 961 F.2d 359, 367–68 (2d Cir.1992); *Conway v. Village of Mount Kisco, New York,* 750 F.2d 205, 214 (2d Cir.1985) (subsequent history omitted). This suggests that a § 1983 claim meeting the elements of malicious prosecution under state law is a viable federal claim. However, a malicious prosecution does not, in and of itself, establish a claim under § 1983. The prosecution complained of still must have operated to cause the deprivation of a right guaranteed under the Constitution or laws of the United States in order to support a § 1983 claim. *Braley v. City of Pontiac,* 906 F.2d 220, 226–27 (6th Cir.1990); *see also Singleton v. City of New York,* 632 F.2d 185, 194–95 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

In support of their motion for summary judgment in the instant case, defendants contend that plaintiffs have failed to establish a viable § 1983 claim because the actions complained of were not performed under color of state law, nor did the actions result in any deprivation of a constitutionally protected right. The court notes that plaintiffs' complaint does broadly allege that as a result of defendants' commencement of criminal proceedings against them plaintiffs were deprived of rights guaranteed by the Constitution, including the due process clause, Complaint, Doc. 1, ¶ 31, but no specific constitutional provision or federal statutory right is invoked. In their answers to defendants' interrogatories plaintiffs do, however, list alleged violations of their rights under the First, Fourth, Fifth, and Fourteenth Amendments.

The First Amendment violations include the alleged impingement of plaintiffs' freedom of association, and the purported attempt by defendants to "subvert the elective process" for selecting tax assessors in the Town of Richford by filing false and malicious charges against plaintiffs instead of utilizing the ballot box to remove them from their public offices. Answers to Interrogatories, dated May 11, 1990, Exh. B attached to Doc. 11, ¶ 57; Answers to Interrogatories, dated October 9, 1989, Exh. B attached to Doc. 11, ¶ 1(a); Answers to Interrogatories, dated December 27, 1989, Exh. B attached to Doc. 11, ¶ 16. Plaintiffs' theory under the Fourth Amendment is that defendants "violated Plaintiffs [sic] forth [sic] Amendment Rights by virtue of there [sic] arrest due to false and malicious charges." Answers to Interrogatories, dated May 5, 1990, Exh. B attached to Doc. 11, ¶ 56; *see also* Answers to Interrogatories, dated October 9, 1989, Exh. B attached to Doc. 11, ¶ 1(a) (Fourth Amendment claim based on "unreasonably seizing" plaintiffs by arresting them on false and malicious charges). The Fifth and Fourteenth Amendments are cited in reference to plaintiffs' alleged deprivation of due process of law through defendants' filing of the criminal complaint, since "there was no effort to provide a fair judicial proceeding but rather

---

**3.** Section 1983 provides:

Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

one whereby Defendant Barrett participated in the initiation of said proceeding and ... would have continued but for the District Attorney's refusal to prosecute the charges." Answers to Interrogatories, dated May 11, 1990, Exh. B attached to Doc. 11, ¶ 55.

■ A thorough search of the record before the court leads to the conclusion that there is no merit to any of plaintiffs' theories of deprivation.[4] But even if plaintiffs were able to demonstrate such a violation, their complaint must fail on the second prong of the test to establish a viable § 1983 claim in that none of the conduct performed pursuant to the alleged conspiracy can be labeled as action taken under color of state law. Courts have repeatedly ruled that private parties may be held liable under § 1983 if they act in concert with state officials, i.e., "under color" of law, pursuant to a conspiracy to deprive a plaintiff of rights or privileges guaranteed by the Constitution or laws of the United States. *E.g., Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993). Courts have also ruled that state actors may be subject to liability for actions physically undertaken by private persons in violation of a plaintiff's liberty or property rights if the state actors directed or aided and abetted the private

persons. *E.g., Dwares*, 985 F.2d at 98; *Fries v. Barnes*, 618 F.2d 988, 990–91 (2d Cir.1980). However, mere conclusory allegations regarding the existence of a conspiracy are insufficient to support a § 1983 conspiracy claim. *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir.1988). As with any summary judgment motion, when the moving party presents facts indicating that no conspiracy existed between private persons and state actors, the nonmoving party cannot "rest on [its] allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)); *see also Holdeman v. Consolidated Rail Corp.*, 649 F.Supp. 1188, 1196 (N.D.Ind.1986) ("[a] party cannot merely cry 'conspiracy' and throw itself on the mercy of the jury nor can a party resist a summary judgment by pointing to snippets of a deposition when the point of every witness' statement was that there was no agreement"), *aff'd,* 840 F.2d 20 (7th Cir.1988).

■ In the case at bar, plaintiffs have come forward with nothing to support their

---

4. *On the freedom of association issue, plaintiffs fail to come forth with evidence of any specific individuals who "declined association [with them] or how defendants could be responsible for the actions of unnamed and unknown persons." Bergman v. Stein, 404 F.Supp. 287, 297 (S.D.N.Y.1975). Indeed, the only evidence in the record before the court is that plaintiffs voluntarily ceased their activities and withdrew from the community in the wake of the "scandal" they claim defendants' actions created. With regard to the purported subversion of the elective process, the court is of the opinion that plaintiffs misconstrue the First Amendment in suggesting that it secures a personal right to the method by which local officials are selected and/or removed. By plaintiffs' own admission, no search, seizure, or arrest occurred in this case upon which a Fourth Amendment claim could properly be premised. See Defendants' Memorandum of Law, Doc. 12, at 7–8. On the Fifth and Fourteenth Amendment due process theory of deprivation, the record demonstrates that the charges filed against plaintiffs were promptly reviewed by the District Attorney and ultimately dismissed by Judge Barrett within two months of their initi-* ation. Thus, rather than a denial of procedural due process, plaintiffs in fact were accorded adequate process in this case. Even if the case had proceeded under Judge Barrett, subsequent procedures accorded during a trial, and appeal if convicted, certainly would have provided plaintiffs adequate opportunity to vindicate their rights. To the extent plaintiffs assert a substantive due process violation, the court does not find the conduct at issue here to "shock the conscience." *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). Defendants assert that they were motivated by their desire to obtain fair tax assessments and Judge Barrett was fulfilling his duties as a town justice. Such conduct is reasonable under the circumstances presented in this case, *see infra* at 1158–1159 & n. 5, 1162–1163, and thus, no claim lies for a deprivation of substantive due process. *See Spear*, 954 F.2d at 68; *see also Fisher v. City of Cincinnati*, 753 F.Supp. 681, 687 (S.D.Ohio 1990) (holding that alleged malicious prosecution is not, as a matter of law, a substantive due process violation).

conspiracy theory. The most comprehensive statement of their theory in the record, beyond the allegations in the complaint, is found in paragraph 22 of their Answers to Interrogatories, dated May 11, 1990, attached to Doc. 11 as Exh. B. Each assertion therein is prefaced with the phrase, "upon information and belief," thus making clear that plaintiffs have no concrete facts to establish the existence of a conspiracy between Judge Barrett and defendants Zahl, Way, and Serata. Plaintiffs point to nothing in the record which refutes the affidavits of defendants Zahl, Way, and Serata, where defendants deny discussing plaintiffs' possible violation of New York Penal Law § 195.00 with Judge Barrett prior to the March 25, 1989 filing of the criminal complaint, deny a conspiratorial agreement of any kind with Judge Barrett, deny any intention to use Judge· Barrett's public office to harm plaintiffs, and attest that their only contact with Judge Barrett was in his official capacity as judge, the person with whom misdemeanor complaints are routinely filed in the Town of Richford. Zahl Affidavit, attached to Doc. 11, ¶¶ 7–8; Way Affidavit, attached to Doc. 11, ¶¶ 12–13; Serata Affidavit, attached to Doc. 11, ¶¶ 7–8. *See also Miller v. Garrett,* 695 F.Supp. 740, 747 (S.D.N.Y.1988) ("routine conversations and meetings ... are insufficient to permit an inference of conspiracy"). Plaintiffs offer nothing to refute defendants' assertions that they went to the judge's court on March 25, 1989 for the purpose of filing and swearing to an accusatory instrument against plaintiffs based on their belief that plaintiffs had violated and were continuing to violate New York Penal Law § 195.00. Zahl

Affidavit, attached to Doc. 11, ¶¶ 7, 9; Way Affidavit, attached to Doc. 11, ¶¶ 12, 14; Serata Affidavit, attached to Doc. 11, ¶¶ 7, 9. Plaintiffs offer nothing to controvert defendants' explanation that they proceeded to Judge Barrett's home so his wife, Mrs. Barrett, could type the criminal complaint, whereupon they each signed it and the judge notarized it. Defendants' Memorandum of Law, Doc. 12, at 5. Indeed, by letter to the court dated July 3, 1991 plaintiffs concede, after deposing Mrs. Barrett, that "while there may have been some activity on the judge's part which was inappropriate it does not appear to be intentional." Doc. 18. This concession eliminates any lingering question about the existence of a conspiracy. Without a conspiratorial agreement between Judge Barrett and defendants Zahl, Way, and Serata regarding a course of action to pursue, and without any intent on Judge Barrett's part to cause the constitutional deprivations plaintiffs allege they suffered, Judge Barrett cannot be labeled a co-conspirator in this case. Without Judge Barrett, there is no state actor to provide the essential link for the actions complained of to have taken place under color of state law. Therefore, whether or not plaintiffs adequately allege deprivation of their constitutional rights, plaintiffs' complaint fails to satisfy the second prong of the test to establish a viable § 1983 claim, and defendants' motion for summary judgment on that claim must be granted as a matter of law.[5]

## 2. Malicious Prosecution Claim

 Defendants also move for summary judgment on plaintiffs' pendent state claim

---

**5.** Even if the court were to conclude that a question of fact exists, Judge Barrett is absolutely immune from § 1983 liability for actions legitimately taken in his capacity as Richford Town Justice. *See Mireles v. Waco,* — U.S. —, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (per curiam) (where conduct is function normally performed by judge, and where parties deal with judge in his judicial capacity, absolute judicial immunity attaches). Such conduct in this instance includes entertaining the criminal complaint in court on March 25, 1989, having the criminal complaint typed, and notarizing the signatures of the complainants Zahl, Way, and Serata. The record before the court reveals that these actions were nothing more than routine actions taken in Judge Barrett's official capacity,

and that the co-defendants' contact with Judge Barrett insofar as this case is concerned was in his official capacity as Richford Town Justice. As such, the judge is entitled to absolute immunity. While the judge's immunity does not bar plaintiffs from proceeding against the private actors, *see Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990) (citing *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980)), *cert. denied,* — U.S. —, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991), this court is of the opinion that none of the routine actions of Judge Barrett identified in plaintiffs' complaint are sufficient to support an inference of conspiracy necessary to maintain the instant § 1983 action. *See Dwares,* 985 F.2d at 99–100; *Miller,* 695 F.Supp. at 747.

for malicious prosecution, arguing that plaintiffs fail to allege facts necessary to satisfy the four-part test under New York law to pursue a malicious prosecution claim. This court's jurisdiction over the state claim is premised on the existence in the complaint of a federal claim seeking to address essentially the same cause of action revolving around the same set of facts. In other words the state and federal claims, deriving from "a common nucleus of operative fact" and being of the type that ordinarily should be tried in a single proceeding, enable the court to use its subject matter jurisdiction over the federal claim to exercise pendent jurisdiction over the state claim.[6] *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 722, 725, 86 S.Ct. 1130, 1136, 1138, 16 L.Ed.2d 218 (1966)).

While some courts have held that the pretrial elimination of federal claims from a complaint warrants dismissal of pendent state claims as well based on lack of subject matter jurisdiction, *e.g., Sector Enterprises, Inc. v. DiPalermo,* 779 F.Supp. 236, 247–48 (N.D.N.Y.1991) (McCurn, C.J.), other courts have acknowledged under certain circumstances that there is discretion to retain jurisdiction of pendent claims even if the federal claims are dismissed prior to trial. *E.g., Enercomp, Inc. v. McCorhill Publishing, Inc.,* 873 F.2d 536, 545–46 (2d Cir.1989). *See also Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970) (where Court stated its unwillingness "to defeat the commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim"). In *Enercomp,* the district court dismissed federal securities claims on the eve of trial, leaving only state issues to be resolved at the trial. The Second Circuit affirmed the district court's decision to retain jurisdiction of the state claims

based on the substantial pretrial investment of time and resources by the parties as well as the court, quoting with approval the district court's statement that to dismiss the state claims at that juncture "would have 'stood judicial economy on its head.'" *Id.* at 546. Noting that the decision whether to retain jurisdiction over such pendent state claims is within the discretion of the district court, the Second Circuit has held that to exercise this discretion the district court is "required to 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity....'" *Kidder, Peabody & Co. v. Maxus Energy Corp.,* 925 F.2d 556, 563–64 (2d Cir.1991) (quoting *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. at 619).

Having concluded that defendants at bar are entitled to summary judgment as a matter of law on plaintiffs' federal claim, this court must consider and weigh the interests of judicial economy, convenience, fairness, and comity before proceeding to analyze the pendent state claim. Plaintiffs' malicious prosecution claim does not present a novel issue which, in the interest of comity, should more appropriately be decided by a state court. Rather, the requisite elements of such a claim are well settled in New York common law. This court must apply the law of New York in accordance with the Supreme Court's holding *United Mine Workers v. Gibbs,* and thus no significant issue regarding comity is raised here. Regarding the interests of judicial economy, convenience, and fairness to the litigants, the court finds that all of these interests would be better served by a decision on the merits in this court. Not only have the parties invested substantial time and resources conducting discovery and presenting their positions on the issues before the court, but they have also waited a substantial period of time to receive the court's decision on the pending motions. The court has carefully reviewed all of the evidence in the record and has deliberated at length in reaching the conclusions contained in this Memorandum–Deci-

---

**6.** This case was commenced prior to the 1990 adoption of 28 U.S.C. § 1367, which codifies the doctrines of pendent and ancillary jurisdiction under the heading "supplemental jurisdiction." Because § 1367 expressly applies only to those actions commenced on or after December 1, 1990, the court will analyze defendants' motion using the case law on pendent jurisdiction.

sion and Order. Moreover, during the pendency of this lawsuit the statute of limitations expired on plaintiffs' claim for malicious prosecution, thus precluding them from pursuing the claim in state court if this court dismisses the claim without reaching the merits. *See* N.Y.Civ.Prac.L. & R. § 215(3) (McKinney 1990). For all of these reasons, the court will exercise its discretion to retain jurisdiction of plaintiffs' pendent state claim for malicious prosecution.

■ Turning now to the merits of the pendent state claim, "[l]iability for the tort of malicious prosecution is ... intended to protect an individual from the unwarranted defamation of character, inconvenience and anxiety suffered when [one] is compelled to appear in a court to answer anticipated criminal charges." *Rosario v. Amalgamated Ladies Garment Cutters Union,* 605 F.2d 1228, 1249 (2d Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). In order to impose liability, however, the claim must satisfy the following elements under New York law to establish a prima facie case of malicious prosecution: (1) initiation or continuation of criminal proceedings by defendant against plaintiff; (2) termination of such proceedings in plaintiff's favor; (3) lack of probable cause for the commencement of such proceedings against plaintiff; and (4) actual malice as the motivation for defendant's actions. *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1250 (1983); *see also Pinaud v. County of Suffolk,* 798 F.Supp. 913, 923 (E.D.N.Y.1992); *Graebe v. Falcetta,* 726 F.Supp. 36, 38 (E.D.N.Y.1989), *aff'd,* 946 F.2d 883 (2d Cir.1991).

■ With regard to the first element, New York Criminal Procedure Law provides that "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court...." N.Y.Crim.Proc.L. § 100.05 (McKinney 1992). Although an individual cannot be said to have commenced criminal proceedings against another merely by reporting the other's involvement in a crime, if the individual takes an active role such as advising, encouraging, or importuning the authorities to take action against the other, then the commencement of criminal

proceedings is attributable to that individual. *DeFilippo v. County of Nassau,* 183 A.D.2d 695, 696, 583 N.Y.S.2d 283, 284 (2d Dep't 1992); *Viza v. Town of Greece,* 94 A.D.2d 965, 966, 463 N.Y.S.2d 970, 971 (4th Dep't 1983). In the case at bar, there is no dispute that defendants Zahl, Way, and Serata swore out an accusatory instrument against the Rounsevilles, after having conducted an independent investigation, sought legal advice, and reported their findings to the local authorities. Defendants' actions clearly demonstrate their active participation in the commencement of criminal proceedings against plaintiffs, and thus the first element of plaintiffs' prima facie case of malicious prosecution is established.

The second element, termination of the underlying proceedings in plaintiffs' favor, presents a more difficult question. New York courts have consistently held that dismissal "in the interests of justice" pursuant to N.Y.Crim.Proc.L. §§ 170.40, 170.55, or 210.40 fails to satisfy the favorable termination requirement to maintain a malicious prosecution claim because such dismissal "is neither an acquittal of the charges nor any determination of the merits. Rather it leaves the question of guilt or innocence unanswered." *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 504–05, 478 N.Y.S.2d 823, 829, 467 N.E.2d 487, 493 (1984), *quoted in Hygh v. Jacobs,* 961 F.2d 359, 368 (2d Cir.1992); *Pinaud v. County of Suffolk,* 798 F.Supp. 913, 924 (E.D.N.Y.1992); *Manno v. State,* 176 A.D.2d 1222, 1223, 576 N.Y.S.2d 717, 717 (4th Dep't 1991); *MacLeay v. Arden Hill Hospital,* 164 A.D.2d 228, 230, 563 N.Y.S.2d 333, 334–35 (3d Dep't 1990), *appeal denied,* 77 N.Y.2d 806, 568 N.Y.S.2d 913, 571 N.E.2d 83 (1991). The Second Circuit, using different language to reach the same conclusion, has held that a plaintiff "must alleg[e] and prov[e] that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged" in order to satisfy the favorable termination prong of the prima facie test for malicious prosecution. *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). *But see Allen v. Town of Colonie,* 182 A.D.2d 998,

1162

1000, 583 N.Y.S.2d 24, 26 (3d Dep't 1992) (court imposed burden of proof on defendants to establish that termination was not favorable to plaintiff). Of course, the most persuasive means of establishing a favorable termination is a verdict of acquittal after a trial on the merits. *See Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir.1989) (noting general rule that acquittal satisfies favorable termination requirement even when there is a conviction on related charge).

In the case at bar, there is no verdict of acquittal upon which to base a finding of favorable termination because the criminal complaint against the Rounsevilles was dismissed before reaching trial. There is no reference to a statutory provision upon which Judge Barrett's dismissal might have been based, nor is there any indication that Judge Barrett reached or intended to reach the merits of the underlying charges when he dismissed the criminal complaint on May 13, 1989. Indeed, the only detail in the record regarding the circumstances of the dismissal is defendant's contention that, in declining to prosecute the Rounsevilles, the local prosecutor advised Judge Barrett that the taxpayers of Tioga County would not be willing to hire an independent assessor to prove the allegations in the criminal complaint. Defendants' Memorandum of Law, Doc. 12, at 5. Whether or not this contention is true, there is no evidence in the record before the court to demonstrate that Judge Barrett intended his dismissal to be an acquittal of the charges or a determination of the merits of those charges. The dismissal leaves the question of plaintiffs' guilt or innocence on the underlying criminal charges unanswered, thus placing this case on the same plane as the *Ryan* line of cases and compelling the conclusion that the favorable termination prong of the prima facie test is not satisfied here. Defendants have met their summary judgment burden by pointing to the absence of evidence to support this prong of the prima

facie test on plaintiffs' claim for malicious prosecution.[7] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Plaintiffs have made no effort to meet their burden of opposing the summary judgment motion with evidence to at least create an issue of fact as to whether "the prosecution terminated in some manner indicating that [they were] not guilty of the offense charged." *Singleton*, 632 F.2d at 195. Based on the court's conclusion that the favorable termination prong of the prima facie test to maintain a malicious prosecution claim is not satisfied in this case, defendants' motion for summary judgment on this claim must be granted as a matter of law.

■ Moreover, even if the court were to find an issue of fact regarding the favorableness of the May 13, 1989 dismissal, plaintiffs' claim fails to meet the third and fourth prongs of the prima facie test to establish a valid claim for malicious prosecution. Probable cause, for purposes of the third prong, is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting [individuals] in the manner complained of." *Pandolfo v. U.A. Cable Systems of Watertown*, 171 A.D.2d 1013, 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991) (citing cases). The New York Court of Appeals has held that "[a] party may act with probable cause even though mistaken, for a mistake of fact ... may be consistent with probable cause if the party acted reasonably under the circumstances in good faith." *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1250 (1983). Hence, the eventual outcome of the prosecution is irrelevant to whether probable cause existed for bringing the charges in the first instance. *See Warren v. Byrne*, 699 F.2d 95, 98 (2d Cir.1983).

7. This court disagrees with the Third Department's *Allen* decision allocating the burden of proof to defendants to establish that the underlying proceedings were *not* terminated in plaintiffs' favor in order to support their motion for summary judgment. *Allen*, 182 A.D.2d at 1000, 583 N.Y.S.2d at 26. Under *Celotex* and its progeny, defendants need only identify the lack of evidence to substantiate one or more essential elements of plaintiffs' claim in order to demonstrate their entitlement to summary judgment as a matter of law. It is plaintiffs' burden to produce evidence to establish the prima facie elements of their claim, and to thereby refute the summary judgment motion.

In the case at bar, the record contains abundant evidence that defendants acted with probable cause in filing charges of official misconduct against plaintiffs. Defendants cite individual reasons for first becoming involved with the reassessment controversy in the Town of Richford. *See supra* at 1152–1153. Each of the defendants also believed that the three-year, three-phase reassessment plan initiated by plaintiffs was inequitable. They attended town meetings, consulted an attorney, and reviewed the Town of Richford public records, discovering that the records reflected highly inequitable tax assessments in favor of plaintiffs, their relatives, and their friends. Defendants' contact with David Gaskell, Executive Director of the New York State Division of Equalization and Assessment, verified defendants' suspicions that the assessment practices were not only inequitable but also illegal. Specifically, defendants assert that in response to their inquiry, Mr. Gaskell informed defendants that the 40% disparity between the assessed and actual values of some Richford properties was far greater than the "accepted standard" of 10%. Defendants' Memorandum of Law, Doc. 12, at 14. Further, defendants state that Mr. Gaskell informed them that the three-year, three-phase reassessment plan was illegal, "piecemeal reevaluation." Way Affidavit, attached to Doc. 11, ¶ 8. To this factual background defendants applied New York's official misconduct statute, Penal Law § 195.00, the existence of which was brought to their attention by Mr. Gaskell. *See* Zahl Affidavit, attached to Doc. 11, ¶ 6. Defendants inferred that plaintiffs had abused their respective offices within the tenor of § 195.00 because properties belonging to plaintiffs, their relatives, and their friends were under-assessed and would continue to be under-assessed under the three-year, three-phase reassessment, resulting in artificially low property tax liabilities for those individuals and consequently imposing artificially high tax burdens on those Town of Richford property owners less well-connected. *See id.; see also* Serata Affidavit, attached to Doc. 11, ¶ 6. Defendants' efforts to resolve these inequities through the District Attorney's Office were thwarted by inaction, so defendants went to Judge Barrett's court to file a criminal complaint with documentation to support their charges. Zahl Affidavit, attached to Doc. 11, ¶¶ 5–7; Way Affidavit, attached to Doc. 11, ¶¶ 11–12; Serata Affidavit, attached to Doc. 11, ¶¶ 5–7.

Under such circumstances, even if plaintiffs' contention that they in fact were not guilty of any wrongdoing is true, the court finds that defendants acted reasonably in investigating the reassessment controversy, in seeking advice from various authorities, and in inferring that plaintiffs had abused their respective offices in violation of § 195.-00. Defendants did not act precipitously in filing the criminal complaint with Judge Barrett. Rather, through their investigation defendants sought and obtained knowledge of the facts, actual or apparent, sufficient to justify any reasonable person in the belief that plaintiffs had violated and were continuing to violate § 195.00. On this basis, the court concludes that defendants had probable cause for filing the criminal complaint against plaintiffs. Plaintiffs' claim for malicious prosecution thus fails the third prong of the prima facie test, and again, defendants' motion for summary judgment must be granted as a matter of law.

■■■ Similarly, plaintiffs' claim fails the fourth and final prong of the prima facie test, that the prosecution was instituted with actual malice. Lack of probable cause and presence of malice go hand-in-hand in the context of a malicious prosecution claim. To illustrate, one New York court has held that malice, in its legal sense, "means a wrongful act, done intentionally without just cause or excuse." *Jestic v. Long Island Savings Bank*, 81 A.D.2d 255, 257, 440 N.Y.S.2d 278, 280 (2d Dep't 1981). Malice may be inferred from a finding that defendants lacked probable cause to initiate the underlying criminal proceedings. *Id.* (citing *Loeb v. Teitelbaum*, 77 A.D.2d 92, 104, 432 N.Y.S.2d 487, 495 (2d Dep't 1980). However, where probable cause is found to exist, clearly no inference of malice follows.

This court's finding that defendants had probable cause to institute the criminal complaint against plaintiffs refutes any contention that defendants acted maliciously in this case. Regardless of whether defendants

were correct in their theory that plaintiffs violated N.Y. Penal Law § 195.00, the presence of probable cause negates the portion of the definition of malice which requires that the underlying prosecution be initiated "intentionally without just cause or excuse." *Jestic*, 81 A.D.2d at 257, 440 N.Y.S.2d at 280; *see also Vidal v. Bloomingdale Bros.*, 85 A.D.2d 508, 509, 444 N.Y.S.2d 105, 106 (1st Dep't 1981) ("honest and reasonable belief" precludes a finding of malice). Moreover, plaintiffs have not come forth with a shred of evidence to support their contention that defendants brought the criminal charges "with an intent to injury [sic], humiliate and embarrass the plaintiffs and knowing full well that the plaintiffs did not commit any criminal activity of any kind." [8] Complaint, Doc. 1, ¶ 33. Therefore, plaintiffs' claim fails the fourth prong of the prima facie test for malicious prosecution, and yet again, defendants are entitled to summary judgment as a matter of law.

### C. Defendants' Request for Attorney's Fees

Defendants request that in addition to granting summary judgment in their favor, the court award them attorney's fees and costs pursuant to 42 U.S.C. § 1988 as the successful parties in a § 1983 action. Section 1988 provides in pertinent part: "[i]n any action or proceeding to enforce a provision of . . . § 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Although the context of § 1983, a civil rights statute, may seem to imply that only successful plaintiffs are entitled to recover costs under § 1988, the plain language of the statute confers this benefit on the "prevailing party" and courts have interpreted this language to mean that defendants may also be entitled to recover costs under § 1988 for successfully defending against civil rights claims. *See, e.g., Martin v. Supreme Court of State of N.Y.*, 644 F.Supp. 1537, 1545 (N.D.N.Y.1986) (Munson, C.J.) (defendant

entitled to attorney's fees because plaintiff's § 1983 action was "unreasonable and vexatious"); *Isaacs v. Temple University*, 467 F.Supp. 67, 69 (E.D.Pa.1979) ("there is no doubt that in appropriate cases a 'prevailing party' defendant is entitled to an award of attorney's fees").

In determining whether a given controversy fits within the category of "appropriate cases" for the award of attorney fees to a victorious defendant, courts have applied a stricter standard than that applied in awarding costs to victorious plaintiffs. *Goldrich, Kest & Stern v. City of San Fernando*, 617 F.Supp. 557, 561–62 (C.D.Cal.1985); *see also Santiago v. Victim Services Agency of Metropolitan Assistance Corp.*, 753 F.2d 219, 221 (2d Cir.1985) (higher burden on defendant because "plaintiff in a civil rights action is 'the chosen instrument of Congress to vindicate' a policy of the highest national priority"). Generally, prevailing defendants in a § 1983 action can only recover attorney's fees if the suit was "frivolous, unreasonable, or groundless, or [if] the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). In other words, "where no evidence supports the plaintiff's position or [where] the defects in the suit are of such magnitude that plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate," an award of attorney's fees to the defendant is appropriate. *Smith v. Smythe–Cramer Co.*, 754 F.2d 180, 183 (6th Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *see also Blackwelder v. Safnauer*, 689 F.Supp. 106, 148 (N.D.N.Y.1988) (Munson, C.J.) (test is " 'whether the claim itself is meritless,' and the court is to measure the merits of the plaintiff's claim against an ob-

---

8. In plaintiffs' Answers to Interrogatories, dated May 11, 1990, plaintiffs make the conclusory statement that the criminal complaint "is malicious because it was brought without regard to the consequences to the Rounsevilles." Answers to Interrogatories, dated May 11, 1990, attached

as Exh. B to Doc. 11, ¶ 51. That argument defies logic, as defendants could not have intended to injure, humiliate, and embarrass plaintiffs if they acted "without regard" to the consequences. Hence, plaintiffs' conclusory statement offers no support for their malicious prosecution theory.

jective standard"), *aff'd on other grounds*, 866 F.2d 548 (1989). "Bad faith on the part of the plaintiff is not a prerequisite" for the defendant to recover attorney fees under § 1988 although it does provide a stronger basis to support such a conclusion. *Colombrito v. Kelly*, 764 F.2d 122, 128–29 (2d Cir. 1985); *see also Davidson v. Keenan*, 740 F.2d 129, 133 (2d Cir.1984) (discussing appropriateness of an award of fees for defendants even when plaintiffs act in good faith on bad advice from their attorney, as plaintiffs have ultimate authority on whether to proceed with the lawsuit).

 Keeping in mind the deterrent effect that the prospect of being required to pay a defendant's attorney's fees holds in the event a plaintiff is not successful in an action, against the objectives of § 1983 as a means to encourage private enforcement of civil rights, this court must apply the principles set forth above in determining whether to exercise its discretion to award attorney's fees to defendants at bar. The court concludes, on the basis of the record before it, that plaintiffs' claims are meritless. As discussed *supra* at 1162–1164, and 1158–1159, plaintiffs had no foundation upon which to build their conspiracy theory insofar as the state action requirement is concerned. Right from the start, plaintiffs came forward with nothing but conclusory and unsupportable allegations regarding the involvement of Judge Barrett, and in fact conceded by letter to the court dated July 3, 1991 that plaintiffs had no legitimate claim against Judge Barrett. Yet, plaintiffs' counsel stated in that letter that "[i]n the event Judge Barrett re-

fuses to discontinue, then it seems to me a jury will have to make that determination," thus indicating plaintiffs' intention to proceed with the litigation after it had become clear, even to them, that no § 1983 claim existed because there was no conspiratorial action taken under color of state law. *See* Doc. 18. Thus, under *Hughes, Smith, Colombrito, Blackwelder,* and other cases cited herein, this action fits within the category of cases for which an award of attorney's fees to defendants is appropriate. The court declines to permit its processes to be used to inflict economic injury on these defendants by forcing them to pay their own expenses in defending against plaintiffs' meritless claims. Therefore, pursuant to § 1988, the court grants the motion by defendants Zahl, Way, and Serata for an award of costs, including attorney fees, incurred in connection with their defense of this action.[9]

#### D. *Effect on Defendant Barrett*

Defendant Barrett did not join in the summary judgment motion brought by defendants Zahl, Way, and Serata. In fact, aside from filing an answer to the complaint, Judge Barrett has not filed any papers or provided any documentation of any sort to this court. Nonetheless, as can easily be discerned from the discussion, *supra* at 21–23 & n. 5, plaintiffs have no claim against Judge Barrett. The factual insufficiency of plaintiffs' claims against Judge Barrett, coupled with the Judge's absolute immunity from liability for actions taken in his official capacity and within his jurisdiction, leave the court with no alternative but to *sua sponte* grant summary judgment in favor of Judge Barrett and dis-

---

9. Defendants' counsel submitted an invoice reflecting services rendered and billed to defendants as of June 18, 1991, Exh. C attached to Doc. 11, but counsel did not specify the billing rate per hour for any of the individuals who worked on this file. The rate identified in the retainer agreements, Exh. A attached to Doc. 11, is $100 per hour for out-of-court time, and $125 for in-court time. However, the invoice is not consistent with this arrangement. For example, the invoice entry for 9/13/89 reflects one hour spent reviewing the complaint and preparing an answer, clearly an out-of-court service, yet defendants were billed at the $125 in-court rate. The invoice entry for 9/20/89 reveals the same inconsistency. Because of the deficiencies and inconsistencies in defendants' fee application, the

court cannot at this time assess an appropriate dollar amount for the award of attorney's fees. Defendants are directed to submit a revised fee application within 20 days of the date this decision is filed. The fee application should specify and justify the hourly rate for each individual who worked on the file, the total number of hours spent by each such individual, and an itemized description of the services provided during those hours. Upon receipt of defendants' submission, the court shall issue an order specifying the dollar amount of the attorney's fee award. Defendants' current application regarding incidental costs is adequate, and thus the court fixes the award of incidental costs at $392.36.

miss this action in its entirety as against him. However, due to his passive participation in the instant motions, Judge Barrett will not be permitted to recover any attorney's fees he may have incurred in connection with his defense in this action.

### E. *Rule 11 Sanctions*

The final issue before the court is the appropriateness of sanctions against plaintiffs' counsel. This is a case that never should have been filed in federal court. The court is provided with a weapon against such actions which unnecessarily drain the resources of the judiciary and impair the efficacy of the administration of justice. Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

> The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction[.]

Fed.R.Civ.P. 11.

The Supreme Court commented on the propriety of imposing Rule 11 sanctions in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The Court stated that "the central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule [sic] Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Id.* at 393, 110 S.Ct. at 2454. The Court emphasized that an attorney who signs and submits papers to a court manifests his or her belief that the papers are "well-grounded in fact, legally tenable, and 'not interposed for any improper purpose,'"

and further reinforced the language of the rule by stating that "[a]n attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'" *Id.* In a 1991 decision the Supreme Court reiterated that an attorney's signature denotes the signer's belief in the merits of the document, and indicates that the signer has considered his or her behavior "in terms of the duty [owed] to the court system to conserve its resources and avoid unnecessary proceedings." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 543–46, 111 S.Ct. 922, 929–30, 112 L.Ed.2d 1140 (1991).

When analyzing a Rule 11 motion, the court must focus on the question of whether "the specific filing was, if not successful, at least well-founded." 498 U.S. at 553, 111 S.Ct. at 934. If the court concludes that the filing was not well-founded in fact or law, then the plain language of Rule 11 requires that sanctions be imposed. *Chemiakin v. Yefimov,* 932 F.2d 124, 126 (2d Cir. 1991) (quoting the district court's conclusion that the "patently frivolous nature of the complaint and the extraordinarily shoddy legal analysis conducted by plaintiff's counsel as the grounding for the lawsuit require the imposition of sanctions under Rule 11"). *Compare Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985) (sanctions warranted for complaint that was "destined to fail") *with Motown Productions, Inc. v. Cacomm, Inc.,* 849 F.2d 781, 784–85 (2d Cir.1988) (reversal of district court's imposition of Rule 11 sanctions after concluding that complaint was not frivolous). Actions by an attorney, regardless of whether performed in good faith, are no bar to sanctions when "a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction,* 762 F.2d at 254.

Applying this objective standard to the case at bar, the court concludes that plaintiffs' counsel failed to fulfill his obligation to the judiciary in instituting this claim on behalf of the plaintiffs. In signing

and filing the complaint and various other documents, plaintiffs' counsel certified that he had undertaken a "reasonable inquiry" and that, "to the best of his knowledge, information, and belief" [the documents were] "well grounded in fact" and the relief sought was "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R.Civ.P. Rule 11. However, a review of the record before this court indicates that plaintiffs' § 1983 claim is baseless in both law and fact. The likely applicability of Judge Barrett's absolute immunity for activities undertaken in his official capacity was an obvious obstacle to the resolution of this claim in favor of plaintiffs. Moreover, it appears that only after the complaint was filed did plaintiffs' counsel conduct an inquiry into the facts and conclude that there were no grounds for maintaining the suit against defendant Barrett. Without conspiratorial involvement on the part of Judge Barrett, the § 1983 claim is destroyed, and with its destruction, this court's subject matter jurisdiction is eliminated. As plaintiffs' counsel himself observed in his July 3, 1991 letter to the court: "it seems to me we are spinning a lot of wheels by having this Court review state court claims which will undoubtedly have to be reviewed again by a supreme court justice upon remand to state court." Doc. 18. Counsel's concern for judicial resources after the fact is little solace in view of the time and resources expended in this litigation, and his failure to ensure that the complaint was well-founded in fact and in law prior to the commencement of the action warrants the imposition of Rule 11 sanctions. *See Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454; *Chemiakin*, 932 F.2d at 126.

As for the pendant state claim for malicious prosecution, even a cursory inquiry into the law of New York would have revealed the lack of foundation for plaintiffs' claim on the facts at bar. The facts do not support the essential elements of the absence of probable cause and the presence of actual malice to substantiate a malicious prosecution claim, nor do the facts support a determination that the underlying proceedings were terminated in plaintiffs' favor within the meaning of that prong of the prima facie test, despite the fact that the charges against plaintiffs were indeed dismissed. Thus, to avoid Rule 11 sanctions, plaintiffs would have to have premised their malicious prosecution theory on a "good faith argument for the extension, modification, or reversal of existing law." Plaintiffs made no such argument; in fact, plaintiffs' counsel failed to timely submit a memorandum of law or any other document in opposition to defendants' summary judgment motion, thus foregoing plaintiffs' opportunity to make such an argument if one exists. Counsel's oral argument was also devoid of such an argument: Mr. Benjamin merely asserted that defendants had instituted a "baseless action," despite the reasonable inference to the contrary readily drawn from the facts. This court cannot discern any argument at all, much less a "good faith argument," for the extension, modification, or reversal of existing law regarding the requisite elements of a malicious prosecution claim.

Therefore, it is the opinion of this court that plaintiffs' counsel violated Rule 11 by signing and filing the complaint without having a well-founded basis in law and fact for either of the claims asserted. Pursuant to the mandate in Rule 11 that the court "shall impose ... an appropriate sanction" when such a violation occurs, the court hereby orders Ronald R. Benjamin, Esq. to pay to the clerk of the court a fine of $1,000.

### III. CONCLUSION

In conclusion, the motion by defendants Zahl, Way, and Serata for summary judgment is granted and the clerk of the court is directed to enter judgment dismissing plaintiffs' complaint in its entirety against defendants Zahl, Way, and Serata. The court *sua sponte* grants summary judgment in favor of defendant Barrett, and the clerk of the court is directed to enter judgment dismissing plaintiffs' complaint against defendant Barrett as well. Furthermore, the motion by defendants Zahl, Way, and Serata for an award of costs and attorney's fees pursuant to § 1988 is granted. Defendants' counsel is directed to submit a revised fee application within twenty (20) days of the filing of this Memorandum–Decision and Order in accor-

dance with the instructions set forth in footnote 9, upon receipt of which the court shall issue an order fixing the dollar amount of the award of costs and attorney's fees. Finally, based on the court's determination that plaintiffs' counsel has failed to meet his duty to the judicial system as outlined by Fed. R.Civ.P. 11, the court imposes upon Ronald R. Benjamin, Esq. a fine of $1,000 as an appropriate sanction. The fine, payable to the clerk of the court, is due immediately.

It is So Ordered.